United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANTHONY L. MORENO,

Plaintiff,

v.

JOSHUA PEFFLEY, et al.,

Defendants.

Case No. 22-cv-04520-VKD

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 24

Pro se plaintiff Anthony Moreno, a state prisoner at the Correctional Training Facility ("CTF") in Soledad, California, asserts claims under 42 U.S.C. § 1983 against defendants L. Mendez, D. Naranjo, and Joshua Peffley for alleged violations of his due process and equal protection rights under the Fourteenth Amendment, and for alleged violation of state regulations regarding gang validation. Dkt. Nos. 6, 7. Mr. Moreno seeks declaratory and injunctive relief as well as damages. Dkt. No. 6 at 14-15. All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 3, 13.

Defendants move for summary judgment on the ground that Mr. Moreno failed to exhaust administrative remedies prior to filing suit as required by the Prison Litigation Reform Act ("PLRA") and state law. Dkt. No. 24 at 1. Mr. Moreno did not file an opposition or otherwise respond to the motion. The Court finds this matter suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

///

///

///

United States District Court
Northern District of California

1    I.    BACKGROUND

2        The following facts are undisputed unless otherwise noted[1]:

3        A.    Parties

4        At all times relevant to this action, Mr. Moreno was a state prisoner incarcerated at CTF.

5    Dkt. No. 6 at 5.  Defendants were employees of CTF.  *Id.*  Mr. Peffley was an Assistant

6    Institutional Gang Investigator, *id.* at 24; Mr. Mendez was a correctional counselor, *id.* at 6; and

7    Mr. Naranjo was a captain, *id.* at 2.

8        B.    Mr. Moreno's Allegations

9        According to the amended complaint, on March 17, 2020, Mr. Peffley conducted a search

10   of Mr. Moreno's cell and confiscated several items.  *Id.* at 8.  Mr. Peffley then used some of these

11   items as "source items" in the validation package that he prepared on March 23, 2020 to establish

12   Mr. Moreno's affiliation with the Mexican Mafia ("EME").  *Id.*  Mr. Moreno says that the

13   evidence included a "fabricated address book with individuals listed . . . as being validated and/or

14   suspected EME associates."  *Id*. at 8.  Mr. Moreno contends that this address book was

15   "fabricated" because there was no record that such an item was confiscated from his cell by Mr.

16   Peffley.  *Id*.

17       On July 7, 2020, Mr. Moreno appeared before a Security Threat Group Classification

18   Committee.  *Id.* at 9.  Mr. Mendez and Mr. Naranjo were members of the committee.  Mr. Moreno

19   argued to the committee that Mr. Peffley had denied him an opportunity to rebut evidence

20   purporting to show his affiliation with EME, and that the address book was fabricated.  *Id*.

21   Nevertheless, the committee approved Mr. Moreno's validation as an associate of the EME.  *Id*.

22   Mr. Moreno contends that he and other Hispanic prisoners "have been targeted, punished, and

23   injured by the named-Defendants because of their race without evidence of dangerous activity"

24   while non-Hispanic incarcerated people have more favorable terms and conditions of confinement.

25

26   _____
     [1] As Mr. Moreno has filed a verified complaint, the Court may rely on statements of fact in the
27   amended complaint that he is competent to assert as if they were made by declaration.  *Schroeder
     v. McDonald*, 55 F.3d 545, 460 (9th Cir. 1995) ("A verified complaint may be used as an opposing
28   affidavit under Rule 56 [if it is] based on personal knowledge and set[s] forth specific facts
     admissible in evidence.") (internal citation omitted).

United States District Court
Northern District of California

1    *Id.* at 12.

2    **C.    Mr. Moreno's Grievances**

3    Using the administrative grievance processes then available to him at CTF, Mr. Moreno

4    submitted two grievances relevant to the claims asserted in this action during the period:

5    Grievance Log No. 12250 and Grievance Log No. 119185.[2]  Dkt. No. 24-1 ¶¶ 6-8, Exs. A, B.

6    **1.    Grievance Log No. 12250**

7    On July 6, 2020, Mr. Moreno submitted Grievance Log No. 12250, alleging that Mr.

8    Peffley committed a felony under California Penal Code § 134 by "preparing false documentary

9    evidence."  Dkt. No. 24-3, ¶ 3, Ex. A.  More specifically, the grievance alleges that "[o]n 6-08-20

10   [Mr. Moreno] received a CDC 128-B2 from O.C.S. stating their action.  Due to c/o Peffley

11   submitting a CDCR 128-B5 to O.C.S. where he specifically notes his false record and deceitful

12   purpose, Mr. Peffley committed a felony under the law."  The grievance does not specifically

13   identify the "false record" at issue but it attaches three documents: (1) a form CDC 128-B2

14   identifying four items received as part of an STG validation package; (2) a form CDCR 128-B5

15   memorandum from CTF, identifying the same four items; and (3) a roster dated February 14, 2020

16   showing representatives to the "Facility C. Men's Advisory Council."  *Id.*, Ex. A.

17   The CTF Office of Grievances ("OOG") issued a decision in response to Grievance Log

18   No. 12250 on July 16, 2020, disapproving the grievance and advising Mr. Moreno of his right to

19   appeal the decision.  *Id.* ¶ 5, Ex. C.  Mr. Moreno did not appeal the decision.  *Id.* at ¶ 6.

20   **2.    Grievance Log No. 119185**

21   On May 18, 2021, Mr. Moreno submitted Grievance Log No. 119185, alleging that his

22   "validation as an associate of the [EME] was flawed, falsified evidence was used, and [Mr.

23   Moreno's] due process rights were violated."  Dkt. No. 24-1 ¶ 9, Ex. C at 22-24.[3]  He attached

24   several documents to the grievance: (1) a "Classification Committee Chrono" dated July 7, 2020;

25

26   _____

     [2] In his amended complaint, Mr. Moreno relies exclusively on Grievance Log No. 119185. *See*
27   Dkt. No. 6 at 2.  He identifies no other relevant grievances.

28   [3] Page number citations for exhibits attached to the supporting declarations are to those assigned
     by the ECF system.

1    (2) an "STG-Threat Assessment Interview" summary dated October 4, 2019; (3) a "Security

2    Squad Receipt" for a cell search conducted on March 17, 2020; and (4) an excerpt from the CDCR

3    128-B5 to which Mr. Moreno refers in Grievance Log No. 12250.  Dkt. No. 24-1, Ex. C at 26-36.

4    The grievance challenges Mr. Moreno's validation as an EME associate, asserting that the

5    evidence for his classification was falsified or misinterpreted, and that Mr. Moreno should have

6    been afforded an additional 24 hours to rebut the evidence.  *Id.* at 24.

7         On May 19, 2021, the OOG rejected the grievance as untimely.  Dkt. No. 24-1 ¶ 9, Ex. C

8    at 18.  Specifically, the decision stated:

9              You did not submit the claim within the timeframe required by
              California Code of Regulations, title 15.  The date you discovered
10             the adverse policy decision, action, condition, or omission by the
              Department was 7/22/2020; the date you submitted this claim was
11             5/18/2021.  You should have submitted your claim on or by
              8/21/2020 to meet the 30 calendar day requirement set forth in the
12             regulations.

13   *Id.*

14        Mr. Moreno appealed this decision to the CDCR's Office of Appeals ("OOA"), asserting

15   that he did not receive a copy of the "Classification Committee Chrono" until April 20, 2021.

16   Dkt. No. 24-1, Ex. C at 12.  The OOA did not timely respond to Mr. Moreno's appeal.  On April

17   16, 2022, the OOA issued a response acknowledging that OOA did not respond to Mr. Moreno's

18   appeal within 60 calendar days, stating "[d]ue to the expiration of time, this response of the Office

19   of Appeals will be the only response."  *Id.* at 11.

20   **II.    LEGAL STANDARD**

21        A motion for summary judgment should be granted if there is no genuine issue of material

22   fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

23   *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  The moving party bears the initial

24   burden of informing the court of the basis for the motion, and identifying portions of the

25   pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the

26   absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In

27   order to meet its burden, "the moving party must either produce evidence negating an essential

28   element of the nonmoving party's claim or defense or show that the nonmoving party does not

4

1    have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

2    *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

3        If the moving party meets its initial burden, the burden shifts to the non-moving party to

4    produce evidence supporting its claims or defenses. *See id*. at 1102. The non-moving party may

5    not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce

6    admissible evidence that shows there is a genuine issue of material fact for trial. *See id*. A

7    genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is

8    "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477

9    U.S. at 248-49.

10   **III.   DISCUSSION**

11       In his amended complaint, Mr. Moreno asserts the following claims against defendants:

12   (1) Fourteenth Amendment due process violation for falsifying evidence of Mr. Moreno's

13   association with the EME and denying him an opportunity to rebut evidence that was used to

14   validate his association with the EME; (2) Fourteenth Amendment equal protection violation for

15   discrimination based on his race; and (3) a state law claim for failure to comply with California

16   regulations. Dkt. Nos. 6, 7. Defendants do not seek summary judgment on the merits of Mr.

17   Moreno's claims at this time; rather, they seek judgment in their favor on the ground that Mr.

18   Moreno failed to properly exhaust all available administrative remedies with respect to these

19   claims. Dkt. No. 24 at 1.

20       **A.    PLRA Exhaustion Requirement**

21       The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to

22   provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.

23   § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

24   facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

25   Exhaustion is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532

26   U.S. 731, 739 (2001)). "Prisoners must now exhaust all 'available' remedies, not just those that

27   meet federal standards." *Id*. at 85.

28       The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or

United States District Court
Northern District of California

5

1    otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 84.

2    "Proper exhaustion" requires compliance with prison grievance procedures. *Id.* at 90-91 (footnote

3    omitted); *Jones v. Bock*, 549 U.S. 199, 217-18 (2007). Procedures may vary from system to

4    system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the

5    boundaries of proper exhaustion. *Jones*, 549 U.S. at 218.

6         Nonexhaustion under § 1997e(a) is an affirmative defense.[4] *Id.* at 211. Defendants have

7    the burden of raising and proving the absence of exhaustion, and prisoners are not required to

8    specifically plead or demonstrate exhaustion in their complaints. *Id.* at 215-17. Defendants must

9    produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56 of

10    the Federal Rules of Civil Procedure. *Id.* If undisputed evidence viewed in the light most

11    favorable to the prisoner shows a failure to exhaust, defendants are entitled to summary judgment

12    under Rule 56. *Id.* at 1166. But if material facts are disputed, summary judgment should be

13    denied. *Id.*

14         **B.    California's Prison Grievance Procedures**

15         During the period applicable to this action, prisoners incarcerated in the California prison

16    system were required to submit grievances in accordance with the procedures in Title 15 of the

17    California Code of Regulations, sections 3480-3487.[5] These procedures apply to prisoner claims

18    disputing "a policy, decision, action, condition, or omission by the [California Department of

19    Corrections and Rehabilitation ("CDCR")] or departmental staff that causes some measurable

20    harm to their health, safety, or welfare." Cal. Code Regs. tit. 15, § 3481(a) (2020).

21         Under the regulations, a prisoner must submit a grievance "within 30 calendar days of

22    discovering an adverse policy, decision, action, condition, or omission" by CDCR to the

23    applicable OOG. *Id.* §§ 3481(a), 3482(b). Discovery occurs when the prisoner "knew or should

24

25    [4] In contrast, California requires inmates to specifically plead exhaustion. *See infra* at 10.

26    [5] Effective June 1, 2020, sections 3084 through 3084.9 of Title 15 were repealed and replaced
     with renumbered and amended provisions at sections 3480 through 3487. *See Tooker v. Mak*, No.
27    20-cv-07373-HSG, 2022 WL 2668381, at *3 (N.D. Cal. July 11, 2022) (describing regulatory
     history), *appeal dismissed*, No. 22-16123, 2023 WL 387042 (9th Cir. Jan. 9, 2023). These
28    sections were further amended effective January 1, 2022. *See* Cal. Code Regs. tit. 15, § 3480(a)
     (2022). This order refers to the regulations in effect at the time of Mr. Moreno's grievances.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    have reasonably known" of the adverse departmental action. *Id.* Among other requirements, the

2    grievance must "describe all information known and available to the claimant regarding the claim,

3    including "key dates and times, names and titles of all involved staff members (or a description of

4    those staff members), and names and titles of all witnesses, to the best of the claimant's

5    knowledge." *Id.* § 3482(c)(2). The grievance must "include all supporting documents available to

6    the claimant related to the claim or identify to the best of the claimant's ability all relevant records

7    with sufficient specificity for those records to be located." *Id.* § 3482(c)(4).

8        The OOG must issue a written response to the grievance within 60 calendar days. *Id.*

9    § 3483(i). As to each claim, the response must include one of the ten decisions listed in the

10   regulation, which include "approved," "disapproved," and "rejected." *Id.* § 3483(i)(1)-(10).

11   Notably, the OOG's ability to reject a grievance is limited to five specific reasons: (1) the claim

12   was not submitted within the timeframe under the regulations; (2) the claim concerns an

13   anticipated policy, decision, action, condition, or omission by the Department or staff; (3) the

14   claim is substantially duplicative of a prior claim by the same claimant; (4) the claim concerns

15   harm to a person other than the claimant; and (5) the claim concerns the regulatory framework for

16   the grievance and appeal process itself. *Id.* §§ 3483(i)(6), 3487(a)(1)-(5); *see also id.* § 3483(e).

17       As a general matter, if the prisoner is dissatisfied with the OOG's decision he may appeal

18   the decision to the OOA. *Id.* § 3485(a). This includes an OOG decision of "disapproved" or

19   "rejected." *See id*. § 3483(i)(1), (6). The appeal must be submitted within 30 calendar days of the

20   date the claimant "knew or should have reasonably known of the [OOG's] decision." *Id.*

21   § 3485(b). The OOA must issue a written response to the appeal within 60 calendar days. *Id.*

22   § 3486(i). As to each claim, the response must include one of the ten decisions listed in the

23   regulation, which includes "time expired." *Id.* § 3486(i)(1)-(10). The OOA may respond to an

24   appeal with a "time expired" decision if it was not able to respond to the claim within the time

25   provided in the regulation. *Id.* § 3486(i)(10).

26       A prisoner must file a grievance with the OOG and timely appeal an adverse OOG

27   decision to the OOA in order to properly exhaust his administrative remedies. *Id.* § 3483(m)(1).

28

United States District Court
Northern District of California

1    **C.    Availability of Administrative Remedies**

2        Having carefully reviewed the record presented, including the amended complaint and

3    defendants' summary judgment papers, the Court finds that it is undisputed that the administrative

4    remedies provided in Title 15 of the California Code of Regulations, sections 3480-3487, were

5    available to Mr. Moreno with respect to the claims at issue in this action.  Mr. Moreno does not

6    allege that he was effectively prevented from submitting grievances or appeals, and nothing in the

7    record suggests otherwise.  *See, e.g., Fordley v. Lizarraga,* 18 F.4th 344, 351–52 (9th Cir. 2021)

8    (summarizing circumstances in which administrative remedies are deemed unavailable).

9        Mr. Moreno's appeal of the OOG's decision rejecting as untimely his grievance in

10   Grievance Log No. 119185 might be read as asserting that he did not file his grievance earlier

11   because he did not obtain a copy of his "Classification Committee Chrono" until April 20, 2021.

12   *See* Dkt. No. 24-1, Ex. C at 12.  However, accepting his assertion regarding the date he received

13   the "Classification Committee Chrono" as true, there is no indication that failure to obtain this

14   document earlier prevented Mr. Moreno from submitting a grievance within 30 calendar days of

15   the date he learned of the classification committee's decision validating him as an EME associate.

16   Specifically, nothing in the record suggests that Mr. Moreno could not have made exactly the

17   same claims he eventually asserted in Grievance Log No. 119185 without a copy of the

18   "Classification Committee Chrono" in hand.  Mr. Moreno was not required to submit with his

19   grievance any supporting documents that were not available to him, and he had the option to

20   merely identify the "Classification Committee Chrono" as a supporting document so that this

21   record could be located by CDCR staff in considering his grievance.  *See* Cal. Code Regs. tit. 15,

22   § 3482(c)(4) (2020).

23   **D.    Federal Claims**

24   **1.    Due Process Claim**

25       The Court first considers whether Mr. Moreno has exhausted his administrative remedies

26   with respect to his Fourteenth Amendment due process claim.  As noted above, the amended

27   complaint asserts that defendants falsified evidence of Mr. Moreno's association with the EME

28   and denied him an opportunity to rebut evidence that was used to validate his association with the

8

United States District Court
Northern District of California

1   EME, in violation of his due process rights.

2           With respect to Grievance Log No. 12250, defendants have shown that, to the extent this

3   grievance can be construed to encompass Mr. Moreno's claim for violation of his due process

4   rights, Mr. Moreno failed to exhaust his administrative remedies by failing to appeal the OOG's

5   "disapproved" decision to the OOA.  *Id.* § 3483(m)(1).

6           With respect to Grievance Log No. 119185, defendants have shown that that this grievance

7   was not timely submitted to the OOG because Mr. Moreno did not submit it within 30 calendar

8   days of discovering the adverse action that is the subject of the grievance.  As noted above,

9   Grievance Log No. 119185 was submitted on May 18, 2021, more than nine months after the date

10  Mr. Moreno learned that he had been listed as an "active Security Threat Group (STG) – 1

11  Validated Mexican Mafia (EME) associate," following the proceeding in which allegedly false

12  evidence was used against him and he was allegedly denied sufficient time to rebut the evidence.

13  Dkt. No. 24-3 at 15; *see also* Dkt. No. 6 at 9; Dkt. No. 24-1 at 15.  Because Mr. Moreno did not

14  file Grievance Log No. 119185 until May 18, 2021, it was rejected as untimely.  *See* Cal. Code

15  Regs. tit. §§ 3483(i)(6), 3487(a)(1) (2020).  According to the applicable regulations, a claim is not

16  exhausted if it was rejected as untimely, pursuant to subsection 3487(a).  *Id.* §§ 3486(i), (m).

17  Furthermore, the Supreme Court has held that "an untimely or otherwise procedurally defective

18  administrative grievance or appeal" cannot satisfy the PLRA's exhaustion requirement.  *See*

19  *Woodford*, 548 U.S. at 84.

20          As it is undisputed that Mr. Moreno did not submit Grievance Log No. 119185 within 30

21  calendar days of discovering the adverse actions at issue, that grievance cannot serve as a basis for

22  exhaustion of Mr. Moreno's administrative remedies.  This is so, even though Mr. Moreno timely

23  appealed the OOG's rejection decision to the OOA.  Because the original grievance was

24  procedurally defective, it cannot constitute proper exhaustion of Mr. Moreno's due process claim

25  against any defendant.[6]  *See Woodford*, 548 U.S. at 90-91.

26

27  [6] Defendants separately argue that neither of the two grievances makes any mention of defendants
    Mendez and Naranjo.  Dkt. No. 24 at 17.  This is incorrect, as Grievance Log No. 119185 refers to
28  both Mr. Peffley and Mr. Mendez by name, and Mr. Naranjo's name appears in the supporting
    documents.  Dkt. No. 24-1 at 22, 27.

United States District Court
Northern District of California

1    **2.    Equal Protection Claim**

2          The Court next considers whether Mr. Moreno has exhausted his administrative remedies

3    with respect to his Fourteenth Amendment equal protection claim.  As noted above, the amended

4    complaint asserts that defendants discriminated against Mr. Moreno with respect to his conditions

5    of confinement based on his race, in violation of his equal protection rights.

6          As defendants observe, neither Grievance Log No. 12250 nor Grievance Log No. 119185

7    mentions discrimination based on race, and neither refers to the use of race as a proxy for gang

8    membership, as Mr. Moreno alleges in his amended complaint.  While a grievance "need not

9    include legal terminology or legal theories" or "every fact necessary to prove each element of an

10   eventual legal claim," *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009), neither of Mr.

11   Moreno's grievances suggest that he believed he was treated unfairly with respect to classification

12   because of his race or ethnicity.

13         Mr. Moreno identifies no other grievance in which he claims to have exhausted his

14   administrative remedies with respect to his equal protection claim.  *See* Dkt. No. 6.  Accordingly,

15   the Court concludes that Mr. Moreno has failed to exhaust properly his administrative remedies

16   with respect to this claim.

17   **E.    State Law Claim**

18         In its screening order, the Court construed the amended complaint as asserting a claim that

19   defendants violated CDCR regulations for gang validation by denying Mr. Moreno an opportunity

20   to rebut the evidence of his association with the EME.  The Court recognized that this claim raises

21   the same issues and is based upon the same factual allegations as Mr. Moreno's federal due

22   process claim.  *See* Dkt. No. 7 at 5.  Defendants argue that Mr. Moreno's state law claim is also

23   barred for failure to exhaust administrative remedies.  Dkt. No. 24 at 18.

24         "When a district court sits in diversity, or hears state law claims based on supplemental

25   jurisdiction, the court applies state substantive law to the state law claims."  *Mason & Dixon*

26   *Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).  California also

27   requires exhaustion of administrative remedies before a claim based on state law may be filed in

28   court.  *Wright v. State of California*, 122 Cal. App. 4th 659, 666 (2004).  However, California law

United States District Court
Northern District of California

1   does not treat exhaustion as an affirmative defense, but instead treats it as an element of the claim,

2   requiring a prisoner to allege that he exhausted his administrative remedies or that he had a valid

3   excuse for not exhausting the administrative remedies in his complaint.  *See Foster v. Sexton,* 61

4   Cal. App. 5th 998, 1023–24 & n.3 (2021).

5         Mr. Moreno's state law claim against defendants for their alleged failure to comply with

6   California's validation regulations is based on the same allegations as his federal due process

7   claim, and the same grievance procedures apply.  For the reasons discussed above with respect to

8   his federal due process claims, Mr. Moreno did not properly exhaust his administrative remedies

9   for his related state law claim, as required by California law.

10         In a single sentence in their summary judgment motion, defendants suggest that, in

11   addition to exhausting his administrative remedies under Title 15 of the California Code of

12   Regulations, Mr. Moreno was required to comply with the California Government Claims Act and

13   failed to do so.  *See* Dkt. No. 24 at 13.  The California Government Claims Act ("Act") requires a

14   person to present his claim to the California Victim Compensation and Government Claims Board

15   before he may file an action for damages against a California governmental entity or employee

16   "for death or for injury to person or to personal property."  Cal. Gov. Code § 911.2; *see* Cal. Gov't

17   Code §§ 905.2, 911.2, 945.4, 950.2.  The Act provides that a plaintiff may not sue a public

18   employee for "money or damages" until he has presented the "claim" to the appropriate entity, and

19   the entity has either acted upon or rejected the claim.  Cal. Gov. Code §§ 905, 945.4, 950.2.  Even

20   assuming Mr. Moreno had a viable state law claim, the limited record before the Court does not

21   permit the Court to find, as a matter of law, that compliance with the Act was required and that no

22   relevant claim was submitted.  *See* Dkt. No. 24-2 ¶ 4, Ex. C (declaration of records custodian

23   research relating to claims by Mr. Moreno pertaining solely to March 17, 2020, the date of the cell

24   search).  Therefore, the Court denies defendants' motion for summary judgment on this ground.

25   **IV.    CONCLUSION**

26         For the foregoing reasons, defendants' motion for summary judgment is granted for failure

27   to exhaust administrative remedies.  Dkt. No. 24.  The Court will enter judgment accordingly.

28         The Clerk shall terminate any other pending motions as moot and close the case.

United States District Court
Northern District of California

1    This order terminates Docket No. 24.

2    **IT IS SO ORDERED.**

3    Dated: November 4, 2024

4

5
    Virginia K. DeMarchi
6    United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12